United States District Court
for the
Southern District of Florida

| Fernando M. Coipel and Ida Coipel, Plaintiffs | ) ) ) | |
|---|---|---|
| v. | ) ) ) ) | Civil Action No. 16-20458-Civ-Scola |
| John Carpenter, and others, Defendants. | | |

**<u>Order on the Defendants' Motions for Summary Judgment</u>**

This matter is before the Court on the Defendants' motions for summary judgment. The Defendants Roshan Milligan and Angel Mercado filed a motion for summary judgment (M&M Mot. Summ J., ECF No. 124), the Defendants John Carpenter and Kenya Crocker filed a motion for summary judgment (C&C Mot. Summ. J., ECF No. 129), and the Defendant City of Miami filed a motion for summary judgment (City Mot. Summ. J., ECF No. 126). The Plaintiffs Fernando and Ida Coipel responded separately to each motion (Resp. to M & M, ECF No. 139 ("Resp. 1"); Resp. to C & C, ECF No. 142 ("Resp. 2"); Resp. to City, ECF No. 143 ("Resp. 3")). Finally, each respective group of Defendants replied (M&M Reply, ECF No. 151; C&C Reply, ECF No. 153; and City Reply, ECF No. 146).

The Court has reviewed the record, the parties' briefs, and the relevant legal authorities. For the reasons more fully explained below, the Court **grants** the Defendants' Motions for Summary Judgment (**ECF Nos. 124, 129, and 126**).

## 1. Background

Fernando Coipel brought this action against the Defendants, Carpenter, James,[1] Crocker, Milligan, and Mercado, individually, and the City of Miami, a municipal corporation. The second amended complaint ("Complaint") raises eight counts:[2] (1) Counts 1, 6, and 7 for false arrest and imprisonment under 42 U.S.C. § 1983 and under state law, respectively; (2) Counts 2 and 5 for use of excessive force under 42 U.S.C. § 1983 and under state law, respectively; (3) Count 3 for assault; (4) Count 4 for battery; and (5) Count 8 for failure to implement appropriate policies, customs, and practices under 42 U.S.C.

---
[1] A clerk's default was entered against the Defendant Harold James (ECF No. 49), and the Plaintiffs filed a notice of joint liability (ECF No. 62).
[2] The Court dismissed Count 9 for loss of consortium. (ECF No. 115). The Court notes that Count 9 was the only count raised by the co-Plaintiff Ida Coipel.

§ 1983. (Second Am. Compl., ECF No. 77.) Counts 1 through 7 raise claims against Carpenter and Crocker. Counts 1 and 5 through 7 raise claims against Milligan and Mercado. Finally, Counts 3 through 8 raise claims against the City of Miami.

Coipel owns a property located at 746 NW 61st Street, in a well-known high-crime area of Miami, Florida. (Depo. of Fernando Coipel, City Mot. Summ. J. Ex. B ("FC Depo") at 2, 45–46, ECF No. 126–2; Depo. Ofc. Crocker, City Mot. Summ. J. Ex. C ("KC Depo.") at 31, ECF No. 126–3; City SMF ¶¶ 1–3, ECF No. 126.) The City of Miami Police Department ("MPD") responded to Coipel's property an average of 100 times a year. (City Mot. Summ. J. Ex. G, ECF No. 126–7.) In fact, Coipel previously had signed an affidavit permitting the police to enter the property and had cooperated with the police to install a no-trespassing sign. (Depo. Sgt. Carpenter, City Mot. Summ. J. Ex. A ("JC Depo.") at 43, ECF No. 126-1.) The entrance to the property passes through a narrow outdoor hallway. From the inside looking out, there are doors and windows on the right side and a wall and stairs on the left side:



(City Mot. Summ. J. Ex. F at 5, ECF No. 126-6.)

On February 14, 2012, around 6:00 in the evening, five officers on MPD's Problem Solving Team—Carpenter, James, Crocker, Milligan, and Mercado—were conducting proactive surveillance of Coipel's property. (City SMF ¶ 5–6, ECF No. 126.) The officers wore a blue shirt with a large police badge in the upper right hand corner and "POLICE" written across the back. (JC Depo. at 10–11.) James, an undercover officer, sat in an unmarked car calling out descriptions of two suspects involved in a narcotics transaction and gave a signal to the other officers to move in for an arrest. (KC Depo. at 6–7; Depo of Ofc. Milligan, M&M Notice of Filing, ECF No. 119-1 ("RM Depo.") at 2; Depo. of

Ofc. Mercado, ECF No. 138-5 ("AM Depo.") at 3.) James never entered the property, but the other officers moved onto the property quickly. (*Id.* at 5.) Milligan and Mercado exited their cars to chase the suspects through the property. (*Id.* at 9.) Crocker entered the building after Milligan and Mercado had cleared the entryway. (*Id.*) Crocker stopped just before the base of the stairs because she saw Carpenter exiting his vehicle and wanted to provide him an update. (Depo. Ofc. Crocker, M&M Notice of Filing ("KC Depo. 2") at 4, ECF No. 117-1.)

Next, Carpenter—in pursuit of the suspects identified by James—reached the entrance and immediately encountered Coipel in the narrow hallway. (JC Depo. at 13, ECF No. 126-1.) Coipel was discussing a potential rental with Shalisha Christian. (FC Depo. at 37.) Carpenter indicated he was a police officer and ordered Coipel to put his hands up and to move against the wall. (*Id.* at 13, 17; Depo. of Shalisha Christian, Coipel Notice of Filing Ex. B ("Christian Depo.") at 3, ECF No. 138-2; Depo. of Fernando Coipel, M&M Notice of Filing ("FC Depo. 2") at 7, ECF No. 122-1.) Coipel heard the command two times. (*Id.*; *see also* KC Depo. at 36; JC Depo. at 19.) Coipel later admitted that the command is one ordinarily given by police officers. (*Id.* at 8.)

When Carpenter ordered Coipel to move, Coipel was standing in the middle of the narrow entryway. (JC Depo. at 13–14.) Coipel did not move out of the way, and instead moved his arms as if blocking the hallway. (FC Depo. 2 at 3, 7; JC Depo. at 15; KC Depo. at 14; Christian Depo. at 3.) Coipel stated that he was the owner of the building and claimed he could not be arrested. (*Id.*; JC Depo. at 3, 22; KC Depo. at 15.) Carpenter pushed Coipel against the wall and began dragging him out to the street through the entryway. (*Id.*; Christian Depo. at 3.) Coipel claimed he was pushed against the wall two times. (FC Depo. at 17.) During the incident in the hallway, Crocker and Carpenter were the only officers present. (FC Depo. at 14, 42–43, 48; JC Depo. at 16; RM Depo. at 3; FC Depo. 2 at 9.) In fact, Milligan had run to the rear perimeter of the property and had detained one of the suspects, and Mercado met up with Milligan there, also with a detained suspect. (RM Depo. at 7–8.)

Once on the street by the police vehicle, Carpenter called for Crocker to bring handcuffs. (KC Depo. at 17.) According to Coipel, Carpenter slammed him against the hood of the car. (FC Depo. at 18; Christian Depo. at 3.) Crocker observed what appeared to be a "shoving match" between Carpenter and Coipel as Carpenter attempted to place handcuffs on Coipel. (KC Depo. at 18.) Coipel's pants fell down around his legs. (FC Depo. at 19; Christian Depo. at 3.) At one point, Coipel pushed Carpenter away and when Carpenter grabbed Coipel, they both fell to the ground. (FC Depo. at 18; KC Depo. at 18–19.) Carpenter continued to struggle with Coipel for a little more than one minute, in an

attempt to get Coipel's hands behind his back. (JC Depo. at 40; KC Depo. at 21.) Coipel locked his arms underneath himself as he lay on the ground. (JC Depo. at 28.) According to Christian, Carpenter positioned himself on top of Coipel with a knee on his back. (Christian Depo. at 4.) Crocker then approached and placed handcuffs on Coipel. (JC Depo. at 30; KC Depo. at 21–22.) Carpenter and Coipel rose from the ground, and Crocker led Coipel to her police vehicle. (KC Depo. at 22–23.)

Throughout the incident, Carpenter was the only officer that ever touched Coipel. (FC Depo. at 28, 31–34, 39.) Coipel even stated, "[Crocker] didn't touch me at all, period. . . . She was way over there. She wasn't even close to me." (FC Depo. 2 at 9.) Milligan and Mercado only returned to the front of the property after Coipel was inside Crocker's police vehicle. (KC Depo. at 23; RM Depo. at 8; FC Depo. at 38.)

Neither Crocker nor Carpenter observed injuries on Coipel, and Coipel complained of none. (JC Depo. at 46–47, KC Depo. at 24–25, 29; FC Depo. at 22; RM Depo. at 9.) Coipel stated his "whole face was all bloody" but then admitted there was no blood on his face. (FC Depo. at 19, 23.) The photographs taken of Coipel at the station and at the scene show no injuries to Coipel's face and abrasions on the elbow and hand. (City Mot. Summ. J. Exs. H & I, ECF Nos. 126–8 and 126-9; Coipel Notice of Filing Ex. Q, ECF No. 138-17.) Coipel admits that he did not request Fire Rescue or any immediate medical attention. (FC Depo. at 20–21; JC Depo. at 4, 33–34, 36, 47.)

Coipel's medical screening with Miami-Dade Corrections noted that Coipel had no cuts or abrasions that required medical attention and that he had no signs of bleeding, trauma, or head trauma. (Coipel Notice of Filing Ex. U at 2, 5, ECF No. 138-21.) Medical records show a visit to Hialeah hospital four days after the incident, where Coipel arrived as a walk-in patient and complained of dizziness. (Coipel Notice of Filing Ex. O, ECF No. 138-15.) Hospital staff noted Coipel appeared in "no apparent distress [and] comfortable" and denied pain thirty minutes after arriving. (*Id.* at –2.) Three months later, Coipel received an X ray of his right ribs that showed no evidence of any rib displacement and no evidence of rib fracture. (Coipel Notice of Filing Ex. P, ECF No. 138-16.)

## 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the

applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### 3. Legal Analysis

#### A. Counts 1, 6, and 7: False Imprisonment and False Arrest Under 42 U.S.C. § 1983; False Arrest, and False Imprisonment

Coipel brings his § 1983 claim for false arrest against the officers, and brings his state-law claims for false arrest and false imprisonment against the officers and the City.[3] The officers argue that they are entitled to summary judgment in their favor: Milligan and Mercado note they did not arrest or imprison Coipel, and even if they had, probable cause existed for his arrest (M&M Mot. Summ. J. at 8-10); and Carpenter and Crocker assert that probable cause existed for the arrest (C&C Mot. Summ. J. at 5–9). Coipel appears to recognize that Milligan and Mercado were not present for the arrest, but attempts to hold them responsible for a "fail[ure] to intervene." (Resp. 1 at 7–14, 18.) Coipel further argues that neither probable cause nor arguable probable cause existed to arrest him. (*Id.*; Resp. 2 at 5.)

The City also asserts that summary judgment should be entered in its favor because Coipel alleged that the officers acted in bad faith, willfully and

---

[3] All the same, because "a § 1983 action against a governmental official in his official capacity is deemed a suit against the entity that he represents," *Ludaway v. City of Jacksonville, Fla.*, 245 F. App'x 949, 951 (11th Cir. 2007) (internal citations and quotations omitted), the Court will analyze the § 1983 claim for false arrest as if it had been asserted against the City.

maliciously, which precludes a finding of liability. (City Mot. Summ. J. at 6.), The City also notes that the officers had probable cause for arresting Coipel. (*Id.* at 7–8.) Further, the City argues that Coipel cannot overcome the limitations on municipal liability, in that Coipel cannot demonstrate that the City has a custom or policy that allowed officers to violate constitutional rights. (*Id.* at 11–12.) Coipel raises the same arguments against the City's motion as he did against the officers' motions. (Resp. 3 at 7.)

First, "[t]o state a claim for false arrest under Florida law, a plaintiff must allege three elements: (1) an unlawful detention and deprivation of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances and (3) an intentional detention." *Amato v. Cardelle,* 56 F. Supp. 3d 1332, 1334 (S.D. Fla. 2014) (Gayles, J.) (citing *Tracton v. City of Miami Beach,* 616 So. 2d 457 (Fla. Dist. Ct. App. 1992)). To state a common law false imprisonment claim under Florida law, the plaintiff must allege: "(1) the unlawful detention and deprivation of liberty of a person (2) against that person's will (3) without legal authority or 'color of authority' and (4) which is unreasonable and unwarranted under the circumstances." *Darnell v. Rivera,* No. 615CV999ORL37TBS, 2016 WL 309050, at *5 (M.D. Fla. Jan. 26, 2016) (quoting *Montejo v. Martin Mem'l Med. Ctr., Inc.,* 935 So. 2d 1266, 1268 (Fla. Dist. Ct. App. 2006)). False arrest and false imprisonment constitute interrelated causes of actions. *Mathis v. Coats,* 24 So. 3d 1284, 1289 (Fla. Dist. Ct. App. 2010). However, "false imprisonment is a broader common law tort[,] [and] false arrest is only one of several methods of committing false imprisonment." *Id.*

Probable cause serves as an affirmative defense to a claim for false arrest. *Amato,* 56 F. Supp. 3d at 1334. Likewise, probable cause provides the legal authority to effectuate an arrest, thereby defeating a claim for false imprisonment. *See Garrison v. Town of Miami Lakes,* No. 11-23739-CIV, 2012 WL 1409665, at *2 (S.D. Fla. Apr. 23, 2012) (Cooke, J.) (noting that probable cause to arrest provides the legal authority to effectuate an arrest); *see also Garnett v. Webster,* No. CV 100-016, 2003 WL 27375076, at *7 (S.D. Ga. Jan. 3, 2003) ("Having determined that the officers had probable cause to believe Plaintiff had committed a penal offense, the officers were well within their legal authority to arrest Plaintiff.").

"Probable cause exists 'where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.'" *Gurrera v. Palm Beach Cty. Sheriff's Office,* 657 F. App'x 886, 889 (11th Cir. 2016) (quoting *United States v. Pantoja–Soto,* 739 F.2d 1520, 1523 (11th Cir.

1984)). "To show probable cause, the arresting officer must have had reasonable grounds to believe that the arrestee committed a crime." *Lozman v. City of Riviera Beach,* 39 F. Supp. 3d 1392, 1409 (S.D. Fla. 2014) (Hurley, J.). "The test is an objective one, i.e. a probable cause determination considers whether the objective facts available to the officer at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *Id.* (citing *United States v. Gonzalez,* 969 F.2d 999, 1003 (11th Cir.1992).

As an initial matter, Coipel alleged false arrest and false imprisonment as two separate claims but failed to allege any additional facts beyond the mere arrest. In other words, while false imprisonment is a broader tort, Coipel alleged only facts to state a claim for false arrest. (Second Am. Compl. ¶¶ 83–84, 87.) Next, Coipel provided no rationale for how Milligan and Mercado could have engaged in false arrest or false imprisonment where neither officer participated in, facilitated, or even observed, the arrest. Regardless, Coipel's state-law claims for false arrest and false imprisonment against all of the Defendants fail because probable cause existed for Coipel's arrest.

Carpenter and Coipel, along with all the witnesses, recalled that Carpenter twice stated his command to Coipel to put his hands up and to move against the wall. Coipel not only refused to obey the command, he held out his hands blocking a hallway so narrow that Carpenter could not move around Coipel to continue in pursuit of the suspects.

Obstructing a law enforcement officer in active pursuit of individuals suspected of criminal activity is a crime under Florida law. Fla. Stat. § 843.02 (2011) ("Whoever shall resist, obstruct, or oppose any [law enforcement] officer . . . without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . ."). Further, during Carpenter's efforts to place Coipel under arrest, a "shoving match" ensued. Coipel's actions during that struggle constitute crimes under Florida law. Fla. Stat. § 843.02 (2011) ("Whoever knowingly and willfully resists, obstructs, or opposes any [law enforcement] officer . . . by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree . . . ."); Fla. Stat. § 784.07(2)(b) (2011) ("Whenever any person is charged with knowingly committing an assault or battery upon a law enforcement officer . . . the offense for which the person is charged shall be reclassified as follows: . . . In the case of battery, from a misdemeanor of the first degree to a felony of the third degree.").

"Similarly, to state a claim under § 1983, a plaintiff must allege a warrantless arrest without probable cause. *Amato,* 56 F. Supp. 3d at 1334 (citing *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir. 1990)). An arrest supported by probable cause absolutely bars the arrestee from pursuing a

§ 1983 false arrest claim. *Id.* at 1505–06. Thus, Coipel's § 1983 claim likewise fails because the Court finds that the officers had probable cause to arrest Coipel.

As a municipal entity, the City can only be held liable under a § 1983 claim "if the alleged constitutional violations resulted from the execution of the City's own policies." *Lozman,* 39 F. Supp. 3d at 1403 (citing *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658 (1978)). However, the Court need not reach the argument regarding the City's customs or policies to resolve Coipel's claims against the City because no underlying constitutional deprivation exists. *Soto v. City of Miami Beach,* 26 F. Supp. 3d 1304, 1310 (S.D. Fla. 2014) (King, J.); *see also City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (finding municipality could not be liable under § 1983 where plaintiff failed to establish underlying constitutional injury).

As a result, the Court **grants** the Defendants' motions for summary judgment as to Counts 1, 6, and 7.

### B. Counts 2 and 5: Use of Excessive Force under 42 U.S.C. § 1983 and State Law

Coipel brings his § 1983 claim for use of excessive force against Carpenter and Crocker, and brings his state-law claim for use of excessive force against all the officers and the City. Carpenter argues that the force exerted to arrest Coipel was objectively reasonable given the circumstances. (C&C Mot. Summ. J. at 13.) Crocker notes that she did not use any force, much less excessive force, against Coipel. (*Id.*) Mercado and Milligan assert generally that they were not present and did not participate in Coipel's arrest. The City raises the same arguments as for Counts 6 and 7. (City Mot. Summ. J. at 6, 11.) Coipel states that the force used against him was disproportionate to the incident and caused him injuries. (Resp. 2 at 8–11.)

"A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest." Fla. Stat. § 776.05. "The officer is justified in the use of any force [w]hich he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest . . . ." Fla. Stat. § 776.05(1). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989). A "typical arrest involves some force and injury." *Rodriguez v. Farrell,* 280 F.3d 1341, 1351 (11th Cir. 2002). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively

reasonable' in light of the facts and circumstances confronting them . . . ." *Graham*, 490 U.S. at 397.

The record shows that Carpenter pushed Coipel against the wall at least once and then dragged Coipel to the police vehicle in front of the building. A struggle ensued, and Carpenter pushed or threw Coipel against the backside of the car. At this point, both Carpenter and Coipel fell to the ground, possibly because they tripped over Coipel's fallen pants. Carpenter struggled to get handcuffs on Coipel and used his knee to control Coipel's movements. Carpenter then requested assistance from Crocker. The pictures taken of Coipel show abrasions on the hand and elbow, consistent with Coipel pinning his arms between his body and the street and Carpenter forcibly moving Coipel's arms. The pictures show no bruising, scratches, cuts, bleeding, or abrasions to the face and head.

Nothing in this scenario indicates the use of excessive force by Carpenter, and the record also shows that no other officer used any force at all against Coipel. By Coipel's own admission, he did not move out of Carpenter's way or respond to Carpenter's command. Coipel also admitted to engaging in a struggle with Carpenter and not moving voluntarily. Carpenter reacted reasonably by attempting to get Coipel out of the way and under control. Certainly, without Coipel's cooperation, some level of force was required. But given Coipel's resistance and lack of notable, documented injuries, this Court cannot find that Carpenter exerted unreasonable force. *See, e.g., Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (collecting cases) ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal."); *Jackson v. Sauls*, 206 F.3d 1156, 1170 n.18 (11th Cir. 2000) (noting that in determining whether the officer used excessive force the court may consider, among other factors, "the need for the application of force . . ., the extent of the injury inflicted . . ., and whether the suspect was resisting . . . .") (internal citations and quotations omitted); *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460–61 (11th Cir. 1997) ("While use of force against [the plaintiff] may have been unnecessary, the actual force used and the injury inflicted were both minor in nature.").

Further, to state a § 1983 claim for excessive force, Coipel must show that the officers somehow violated Coipel's Fourth Amendment right "to be secure in [his] person . . . against unreasonable . . . seizure[]." *Graham*, 490 U.S. at 394 (quoting U.S. Const. amend. IV). Again, because Carpenter had probable cause to arrest Coipel and exercised objectively reasonable force in order to effectuate the arrest, Coipel cannot show any violation of his Fourth Amendment rights. Further, as stated above, for these same reasons the Court

does not need to determine whether the City had any policy or custom of permitting Fourth Amendment violations. *See Soto,* 26 F. Supp. 3d at 1310.

As a result, the Court **grants** Carpenter's and Crocker's motion for summary judgment as to Count 2, and **grants** the Defendants' motions for summary judgment as to Count 5.

### C. Counts 3 and 4: Assault and Battery under State Law

Coipel brings state-law claims for assault and battery against Carpenter, Crocker, and the City. Carpenter and Crocker assert that these claims are duplicative to the excessive force claim, giving rise to the same arguments. (C&C Mot. Summ. J. at 18.) The City claims sovereign immunity based on Coipel's allegations that the officers acted in bad faith, with malice, and with willful disregard of Coipel's saftey. (City Mot. Summ. J. at 6.) The City also argues that Coipel has not stated causes of action based on municipal liability. (*Id.* at 11.) Coipel raises no arguments in support of his claims for assault and battery. (Resp. 1; Resp. 2; Resp. 3.)

Under Florida law, an "assault" is "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011(1); *see also Tambriz-Ramirez v. State*, 213 So. 3d 920, 923 (Fla. Dist. Ct. App. 2017). "A person commits battery if he: (a) Actually and intentionally touches or strikes another person against the will of the other; or (b) Intentionally causes bodily harm to an individual. Fla. Stat. § 784.03(1); *see also United States v. Williams*, 609 F.3d 1168, 1170 (11th Cir. 2010).

"If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." *Essex Ins. Co. v. Big Top of Tampa, Inc.*, 53 So. 3d 1220, 1223 (Fla. Dist. Ct. App. 2011) (internal citation and quotations omitted). "Under Florida law, a police officer is entitled to use force reasonably necessary to effectuate an arrest and police contact incident to an arrest cannot form the basis of a claim for battery." *Soto*, 26 F. Supp. 3d at 1311 (citing *Lester v. City of Tavares,* 603 So. 2d 18 (Fla. Dist. Ct. App. 1992) and *City of Miami v. Albro,* 120 So. 2d 23 (Fla. Dist. Ct. App. 1960)). Where an officer has probable cause to arrest an individual and uses the force necessary to effectuate an arrest, as a matter of law that officer's conduct does not constitute battery. *Soto*, 26 F. Supp. 3d at 1311.

The Court already has found probable cause existed to arrest Coipel. The Court further has found that Carpenter did not use excessive force and Crocker used no force at all. The record simply cannot support Coipel's claims for assault and battery against Carpenter and Crocker. As a result, Coipel's claims

against the City fail as well. The Court **grants** Carpenter's and Crocker's motion for summary judgment and **grants** the City's motion for summary judgment as to Counts 3 and 4.

### D. Count 8: Failure to Implement Appropriate Policies, Customs, and Practices

In Count 8, Coipel alleges that the City "developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Miami" and that Coipel's rights were violated as a result. (Second Am. Compl. ¶ 90.) It appears that Coipel was attempting to allege, through this separate count, the City's liability for Counts 3 through 7 (state law claims for assault, battery, excessive force, false arrest, and false imprisonment, respectively) based on a theory of municipal liability. The City disclaims any custom or policy demonstrating an official choice to disregard constitutional rights. (City Mot. Summ. J. at 11–17.)

As stated throughout this order, the Court does not reach the issue of whether the City maintained policies and customs that disregarded constitutional rights because as a matter of law Coipel did not suffer any deprivation of a constitutional right. *See Lozman*, 39 F. Supp. 3d at 1403; *Soto*, 26 F. Supp. 3d at 1310; *see also Heller,* 475 U.S. at 799.

Accordingly, the Court **grants** the City's motion for summary judgment as to Count 8.

## 4. Conclusion

Accordingly, for the reasons set forth above, the Court **grants** Roshan Milligan's and Angel Mercado's motion for summary judgment (**ECF No. 124**), **grants** John Carpenter's and Kenya Crocker's motion for summary judgment (**ECF No. 129**), and **grants** the City of Miami's motion for summary judgment (**ECF No. 126**).

**Done and ordered**, at Miami, Florida, on August 7, 2017.

Robert N. Scola, Jr.
United States District Judge